Joseph E. Mais (#005470)
Lindsey M. Huang (#034544)
Austin C. Yost (#034602)
**PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone: 602.351.8000
Facsimile: 602.648.7000
JMais@perkinscoie.com
LHuang@perkinscoie.com
AYost@perkinscoie.com
DocketPHX@perkinscoie.com

*Attorneys for Plaintiff Dustin Micheal Woods*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Dustin Micheal Woods,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>Jason Scissons,<br><br>　　　　　Defendant. | No. CV-17-08038-PCT-GMS (BSB)<br><br>**MOTION FOR SPOLIATION SANCTIONS**<br><br>**(Oral Argument Requested)** |

## **MOTION**

Pursuant to Federal Rule of Civil Procedure 37(e)(1), Plaintiff Dustin Woods moves for spoliation sanctions relating to the City of Prescott's failure to preserve any of the dash camera footage from any of the City of Prescott police vehicles that arrived at or near the parking lot where Plaintiff was arrested and where Plaintiff alleges that Defendant applied excessive force against him on June 25, 2016 despite having a legal duty to preserve that evidence. To cure the significant prejudice to Plaintiff caused by the acts or omissions of City of Prescott employees that resulted in the destruction of all the dash camera video evidence from June 25, 2016, Plaintiff respectfully requests that this Court (1) permit the parties to present evidence and argument to the jury regarding the loss or destruction of all the dash camera footage and (2) issue an appropriate instruction to the jury on spoliation to assist the jury in its evaluation of that evidence.

**MEMORANDUM**

Central to the upcoming trial in this matter is the narrow factual question of whether Defendant, a City of Prescott police officer, repeatedly struck Plaintiff while Plaintiff was handcuffed and lying face down on the ground after an otherwise lawful arrest. Discovery has confirmed that at least <u>three</u>, and potentially up to <u>seven</u>, video dash cameras from separate City of Prescott police vehicles should have started automatically recording in the normal and routine course of the City of Prescott's business when the drivers of those vehicles—City of Prescott police officers—activated their emergency lights and sirens on the way to the scene, and that those video dash cameras may have filmed the crucial events. But the City of Prescott admits that it has permanently deleted all the footage that ever existed from June 25, 2016. Moreover, Defendant's Counsel refuses to state when any of this crucial evidence was destroyed and whether, must less when, he issued a litigation hold.

Plaintiff is a convicted felon whose credibility will be attacked by Defendant. If, as Plaintiff contends, he was in fact struck while handcuffed and face down, the destruction of all this video evidence is enormously prejudicial to Plaintiff's ability to prove his case. As a result, Plaintiff respectfully requests that this Court (1) permit the parties to present evidence and argument to the jury regarding the destruction of the dash camera footage as well as (2) issue an appropriate instruction to the jury on spoliation to assist the jury in its evaluation of that evidence.

**FACTUAL BACKGROUND**

On June 25, 2016, the date of the arrest and alleged excessive force giving rise to Plaintiff's § 1983 claim against Defendant, the City of Prescott Police Department had dash cameras in its police vehicles. [Yost Decl., Ex. A (Deposition Transcript of Jason Scissons ("Scissons Dep.")) at 32:11–17; Yost Decl., Ex. B (Deposition Transcript of Edward Siller ("Siller Dep.")) at 23:12–15; Yost Decl., Ex. C (Deposition Transcript of Ryan Ehlert ("Ehlert Dep.")) at 14:17–22; Yost Decl., Ex. D (Deposition Transcript of Timothy Martin ("Martin Dep.")) at 29:13–18]. The dash cameras are programmed to automatically turn on when an officer starts his or her vehicle, [Yost Decl., Ex. D (Martin Dep.) at 29:19–30:8],

1    and to automatically record when an officer activates his or her emergency lights and sirens
2    in the vehicle, [Yost Decl., Ex. A (Scissons Dep.) at 33:16–19; Yost Decl., Ex. B (Siller
3    Dep.) at 23:16–22; Yost Decl., Ex. D (Martin Dep.) at 29:19–30:23].

4           Defendant testified that he activated the emergency lights in the City of Prescott
5    police vehicle that he was driving when he was in pursuit of, and driving behind, Plaintiff.
6    [Yost Decl., Ex. A (Scissons Dep.) at 44:1–5, 49:8–19].  Defendant further testified that
7    when Plaintiff drove his vehicle into a parking lot and parked there, Defendant drove behind
8    Plaintiff, followed him down an alley into the parking lot, and then parked in the same
9    parking lot near Plaintiff—all with his emergency lights still activated.  [*See* Yost Decl.,
10   Ex. A (Scissons Dep.) at 44:6–18, 47:17–49:2, 49:8–24; *see also* Yost Decl., Ex. E
11   (Deposition Transcript of Dustin Woods ("Woods Dep.")) at 17:12–19:8].  Defendant's
12   vehicle was parked facing Plaintiff, but at somewhat of an angle.  [Yost Decl., Ex. A
13   (Scissons Dep.) at 49:3–7; Yost Decl., Ex. E (Woods Dep.) 19:7–8, 20:11–16].  But
14   Defendant testified that his emergency lights remained activated at the time that he parked
15   to exit his vehicle and to approach and arrest Plaintiff.  [Yost Decl., Ex. A (Scissons Dep.)
16   at 49:8–19, 80:13–81:9].

17          In addition to Defendant having activated the emergency lights in his City of Prescott
18   police vehicle, at least one other police officer, driving a separate City of Prescott police
19   vehicle with its emergency lights activated, arrived at the parking lot where Plaintiff and
20   Defendant parked and where the alleged excessive force occurred. [Yost Decl., Ex. B (Siller
21   Dep.) at 28:8–11, 28:21–29:14, 30:2–7].  Officer Siller testified that he parked almost
22   directly behind Plaintiff's vehicle, and that he did not see any other police officer in the
23   parking lot when he arrived. [Yost Decl., Ex. B (Siller Dep.) at 29:11–14; 30:10–14, 60:10–
24   16]. Moreover, at least one other police officer, driving yet another City of Prescott police
25   vehicle with its emergency lights activated, drove past the parking lot where Plaintiff and
26   Defendant parked and where the arrest occurred and then parked directly across the street.
27   [Yost Decl., Ex. D (Martin Dep.) at 38:4–13, 39:25–40:16].  Officer Martin testified that he
28   was the first police officer to arrive at the scene. [Yost Decl., Ex. D (Martin Dep.) at 45:13–

1   16]. And at least four other City of Prescott police officers arrived at the parking lot where
2   Plaintiff and Defendant parked and where the alleged excessive force occurred, although it
3   is unknown to Plaintiff whether all four of those other police officers activated the
4   emergency lights in their City of Prescott police vehicles while they were on their way to
5   the scene. [Yost Decl., Ex. A (Scissons Dep.) at 74:18–22, 75:23–25, 77:17–19; Yost Decl.,
6   Ex. C (Ehlert Dep.) at 19:15–16].

7        In sum, based upon the testimony from multiple City of Prescott police officers
8   described above, at a bare minimum, City of Prescott police vehicles should have
9   automatically recorded at least <u>three</u> sets of dash camera footage related to the allegations
10  in this lawsuit on June 25, 2016 in the normal and routine course of the City of Prescott's
11  business. Because at least four other City of Prescott police officers also arrived at the
12  parking lot where the alleged excessive force occurred, it is eminently likely that City of
13  Prescott police vehicles recorded even more sets of dash camera footage—in fact, it is
14  possible that the City of Prescott recorded up to <u>seven</u> sets of dash camera footage in
15  connection with the allegations in this lawsuit. Yet, according to Defendant's Counsel, all
16  the dash camera footage that ever existed has been permanently deleted by the City of
17  Prescott. [Yost Decl., Ex. I (April 23, 2019 Letter from L. Crown to A. Yost & L. Huang
18  ("Crown Letter")) at 4 ("No Dashcam video footage from June 25, 2016 exists today.")].

19  **ARGUMENT**

20       The City of Prescott's failure to preserve <u>any</u>—let alone <u>all</u>—of the highly relevant
21  dash camera footage has substantially and seriously prejudiced Plaintiff's ability to prove
22  his case. This Court should therefore order measures pursuant to Federal Rule of Civil
23  Procedure 37(e)(1) to cure Plaintiff's significant prejudice by (1) permitting the parties to
24  present evidence and argument to the jury regarding the City of Prescott's loss or
25  destruction of all the dash camera footage and (2) issuing an appropriate instruction to the
26  jury on spoliation to assist the jury in its evaluation of that evidence.

27       "The failure to preserve electronic or other records, once the duty to do so has been
28  triggered, raises the issue of spoliation of evidence and its consequences." *Pettit v. Smith*,

1  45 F. Supp. 3d 1099, 1104 (D. Ariz. 2014) (quoting *Thompson v. U.S. Dep't of Hous. &*
2  *Urban Dev.*, 219 F.R.D. 93, 100 (D. Md. 2003)). "Spoliation is the destruction or material
3  alteration of evidence, or the failure to otherwise preserve evidence, for another's use in
4  litigation." *Id.* A district court has the authority to impose sanctions for the spoliation of
5  electronically stored information under Federal Rule of Civil Procedure 37(e)(1):

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court[,] . . . upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice.

10  Because at least <u>three</u>, and potentially up to <u>seven</u>, video dash cameras from separate
11  City of Prescott police vehicles should have started automatically recording when City of
12  Prescott police officers activated the emergency lights and sirens in those vehicles, and
13  because Plaintiff has not been made aware of any technical malfunction that might have
14  affected any of those cameras on June 25, 2016, let alone a malfunction that would have
15  curiously caused all the dash cameras to not operate as expected that day, Plaintiff assumes
16  that all those cameras operated as they would have in the City of Prescott's normal and
17  routine course of business on June 25, 2016.[1] With that being the case, of course, the City
18  of Prescott's dash camera video footage was electronically stored information, and that
19  highly relevant evidence was lost when the City of Prescott permanently deleted it.

20  All of the other prerequisites to obtaining spoliation sanctions under Federal Rule of
21  Civil Procedure 37(e)(1) are also present here: (1) the City of Prescott had a duty to preserve
22  all the dash camera video footage recorded by its vehicles on June 25, 2016; (2) as far as
23  Plaintiff is aware, the City of Prescott did not take any reasonable steps to preserve that

---

[1] If Defendant rejects Plaintiff's assumption on this point and instead asserts that none of the seven dash cameras in separate City of Prescott police vehicles recorded any dash camera footage as expected at any relevant time on June 25, 2016, then the Court should place the burden of proving that fact on Defendant because such an assertion would run counter to the City of Prescott's normal and routine course of business, and the City of Prescott has access to all the relevant business records. The Court should also place the burden of proving that such a malfunction, if any, was not caused by intentional acts or omissions of City of Prescott employees on Defendant for the same reasons.

video footage; and (3) Plaintiff has been substantially prejudiced by the City of Prescott's destruction of that evidence. As a result, the Court should order measures to cure Plaintiff's significant prejudice. Plaintiff respectfully requests that this Court (1) permit the parties to present evidence and argument to the jury regarding the destruction of the dash camera footage as well as (2) issue an appropriate instruction to the jury on spoliation to assist the jury in its evaluation of that evidence.[2]

### I. The City of Prescott had a duty to preserve all the dash camera footage that was recorded by City of Prescott police vehicles on June 25, 2016.

"A duty to preserve information arises when a party knows or should know that the information is relevant to pending or future litigation." *Pettit*, 45 F. Supp. 3d at 1105. "The duty to preserve is triggered not only when litigation actually commences, 'but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation.'" *Id.* (quoting *Suroweic v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011)).

Here, it is uncontested by the parties that Defendant used force against Plaintiff in the course of lawfully arresting him on June 25, 2016. The only relevant and material factual dispute to be tried in this case involves Plaintiff's allegations that, following his arrest, Defendant struck him multiple times while he was lying face down on the ground with his wrists in handcuffs behind his back, and that Defendant continued striking him until another City of Prescott police officer arrived at the parking lot.

Defendant's use of force against Plaintiff on June 25, 2016 was first reviewed internally by Officer Clayton Heath, Defendant's supervisor at the City of Prescott Police Department, who completed his review in just two days. [Yost Decl., Ex. F (Officer Clayton Heath's Use of Force Report ("Heath Report")) at 1]. Then, the City of Prescott determined,

---

[2] Although there is authority in this circuit for the proposition that the jury may consider the fact that the dash camera evidence is "missing" even without the Court imposing a jury instruction or other sanction, *see Ford v. Barnas*, No. CV 17-2688-PHX-DGC, 2018 WL 5312912, at *6 n.3 (D. Ariz. Oct. 26, 2018), Plaintiff here expressly requests that this Court resolve the spoliation issue and impose appropriate sanctions.

1  apparently based on the information in Officer Heath's report, that Defendant's use of force
2  warranted further internal review by the City of Prescott's Incident Review Board.  [Yost
3  Decl., Ex. G (City of Prescott Police Department's Incident Review Board Report ("IRB
4  Report")) at 1 ("Lt. Gill and I reviewed the information in the Use of Force Report and
5  concluded this incident warranted a full Incident Review Board.")].  Although the exact
6  date that the City of Prescott determined that Defendant's use of force against Plaintiff
7  required an elevated form of internal review in the City of Prescott Police Department is
8  unknown to Plaintiff, the Incident Review Board ultimately issued its findings on July 22,
9  2016.  [Yost Decl., Ex. G (IRB Report) at 1].  Because the City of Prescott determined
10 internally that Defendant's use of force against Plaintiff required an elevated form of
11 internal review, the Court should conclude that the City of Prescott's duty to preserve
12 relevant evidence was triggered no later than the date that the Incident Review Board
13 determined its review was necessary, or alternatively, on the date it issued its findings.

14       Even if the Court concludes that the City of Prescott's duty to preserve was not
15 triggered by the City of Prescott's own determination that Defendant's use of force against
16 Plaintiff required a heightened level of internal review, Plaintiff filed his Complaint against
17 Defendant on February 27, 2017, [Dkt. 1], and Defendant's Counsel concedes that a Waiver
18 of the Service of Summons was sent to Defendant no later than April 7, 2017, [Yost Decl.,
19 Ex. I (Crown Letter) at 3].  Consequently, if the City of Prescott's duty to preserve was not
20 triggered when the Incident Review Board determined that its review was necessary or
21 when it ultimately issued its findings, then, alternatively, the Court should conclude that the
22 duty to preserve relevant evidence was triggered on the date that Plaintiff filed his
23 Complaint alleging excessive force against Defendant or, at the very latest, on the date that
24 Defendant received a Waiver of the Service of Summons of Plaintiff's Complaint.

25       It is of no moment that the City of Prescott is not a party to this suit.  Judge Campbell
26 rejected such a narrow interpretation of the duty to preserve in *Pettit* when he determined
27 in that analogous excessive force case that the Arizona Department of Corrections ("ADC")
28 had a duty to preserve relevant video evidence, even though the plaintiff inmate filed his

1  § 1983 suit against the individual defendant correctional officers. 45 F. Supp. 3d at 1102,
2  1105–06. Judge Campbell reasoned that, although ADC was not a party to that suit, "ADC
3  [was] not a disinterested third party" because it was "responsible for Defendants' training
4  and conduct, and it had complete control over the relevant evidence in [the] case and over
5  Plaintiff's ability to access that evidence and Defendants' ability to preserve it." *Id.* at 1106.
6  Indeed, said Judge Campbell, "Defendants individually had no ability to control the
7  evidence," and "an inmate like Plaintiff [could not] exercise any control over evidence in
8  ADC's possession." *Id.* Judge Campbell thus concluded that, because "ADC control[led]
9  the evidence and who [had] access to it, and the State [was] defending [the] case and
10 [would] pay any judgment that result[ed] from it," ADC was not "merely a disinterested
11 third party with no duty to preserve evidence"—rather, it was "in the same position as
12 parties on whom courts routinely impose a duty to preserve" because "it is an agency of the
13 State that funds the defense and pays any judgment, its employees are subject to suit for
14 their actions while in its employ, and it has sole custody and control over most of the
15 relevant evidence." *Id.*

16 So too here. Like ADC, the City of Prescott "is not a disinterested third party";
17 rather, "[i]t is responsible for [Defendant's] training and conduct, and it had complete
18 control over the relevant evidence in this case and over Plaintiff's ability to access that
19 evidence and [Defendant's] ability to preserve it." *See id.* Defendant here, like the
20 individual defendant correctional officers there, "individually [has] no ability to control the
21 evidence." *See id.* And Plaintiff here, like the plaintiff inmate there, cannot "exercise any
22 control over evidence in [the City of Prescott's] possession." *See id.*; *see also id.* (noting
23 that ADC, like the City of Prescott, was "defending [the] case and [would] pay any
24 judgment that results from it");[3] *Ramos v. Swatzell*, No. EDCV 12-1089 BRO, 2017 WL
25 2857523, at *6 (C.D. Cal. June 5, 2017), *report and recommendation adopted*, No. EDCV

---

[3] Defendant disclosed in his initial disclosure statement that Plaintiff's claims "are covered by the general liability coverage portion of the Arizona Municipal Risk Retention Pool." Yost Decl., Ex. J (Defendant's Initial Disclosure Statement) at 2]. Plaintiff therefore assumes that the City of Prescott will pay any judgment that results from this lawsuit.

12-1089 BRO, 2017 WL 2841695 (C.D. Cal. June 30, 2017) (finding that a non-party had a duty to preserve relevant evidence when it "was an interested third party that controlled [the defendant's] personnel file and had access to it, and it [was] also providing [the defendant's] legal defense"); *Muhammad v. Mathena*, No. 7:14cv00529, 2016 WL 8116155, at *8 (W.D. Va. Dec. 12, 2016) (finding that non-parties had a duty to preserve relevant evidence when they were employees of "the institutions that ultimately [bore] responsibility for preserving evidence and litigating cases filed by prisoners" and observing that the "imputation of the [non-parties'] negligent spoliation to the Defendants is necessary here in order to avoid unfair prejudice to [the plaintiff]"). This Court should therefore conclude that the City of Prescott had a duty to preserve all the highly relevant dash camera footage that it recorded on June 25, 2016 in connection with the allegations in this lawsuit.

**II.   As far as Plaintiff is aware, the City of Prescott did not take any reasonable step to preserve the highly relevant dash camera footage.**

Plaintiff is unaware of any reasonable step whatsoever that the City of Prescott took to identify and preserve any of the highly relevant dash camera video files. Plaintiff only knows what Defendant has disclosed: that any and all dash camera footage that ever existed pertaining to events that occurred on June 25, 2016 has been permanently deleted by the City of Prescott. Defendant's Counsel stated that the City of Prescott's retention policy will cause dash camera footage to "remain on the server for a minimum of nine months and then such footage is automatically erased at some point thereafter" if the City of Prescott does not take steps to preserve the evidence. [Yost Decl., Ex. I (Crown Letter) at 3–4].

But Defendant's Counsel has repeatedly refused to answer whether he ever instructed his client, the City of Prescott, to place a litigation hold in connection with this lawsuit, and if so, when, [Yost Decl., Ex. H (Emails from Austin Yost to Larry Crown, dated April 17, 2019; April 18, 2019; April 19, 2019; April 23, 2019; and April 26, 2019 ("Yost Emails")], taking the unwarranted position that such instructions (or his failure to issue any such instructions) are protected by the attorney-client privilege, [Yost Decl., Ex. I (Crown Letter) at 1], despite Plaintiff's Counsel's citation to case law establishing that the

facts of whether a litigation hold was placed and when are not attorney-client privileged communications under circumstances like these where there are legitimate concerns about lost or destroyed evidence. *See, e.g.*, *Bagley v. Yale Univ.*, 318 F.R.D. 234, 241 n.5 (D. Conn. 2016) ("Courts have recognized the need for plaintiffs to obtain information relating to litigation hold notices, such as whether a notice was actually issued and what steps were thereafter taken to collect and preserve relevant documents and data."); *Magnetar Techs. Corp. v. Six Flags Theme Park, Inc.*, 886 F. Supp. 2d 466, 482 (D. Del. 2012) (recognizing the "growing trend among courts to find the attorney-client privilege is lost [as to litigation hold letters] when spoliation has occurred").

Plaintiff's Counsel has also asked Defendant's Counsel to provide the date that the dash camera video files were permanently deleted by the City of Prescott, and Defendant's Counsel has refused to answer that question. [Yost Decl., Ex. H (Yost Emails)]. Further, Defendant's Counsel informed Plaintiff's Counsel that Officer Heath, Defendant's supervisor at the City of Prescott Police Department, determined on the scene that "there were not Dashcam video recordings of any pertinent events or matters of evidentiary value." [Yost Decl., Ex. I (Crown Letter) at 2]. Despite requests from Plaintiff's Counsel, Defendant's Counsel has refused to say whether any other person at any time has seen any of the dash camera footage from any of the City of Prescott police vehicles that arrived at or near the parking lot at or near the time of the alleged excessive force and made such a determination, and if so, who and when.[4] [Yost Decl., Ex. H (Yost Emails)].

In short, Plaintiff knows that the City of Prescott permanently deleted all the dash camera footage that it recorded on June 25, 2016 in connection with the allegations in this lawsuit. But despite repeated requests for information, [Yost Decl., Ex. H (Yost Emails)], Plaintiff still does not know when those video files were deleted and what preventative

---

[4] It is also noteworthy that Officer Heath's Use of Force report, which he completed in just two days, does not even mention the dash camera footage from any of the City of Prescott police vehicles that arrived at or near the parking lot at or near the time of the alleged excessive force, his review of that footage, or his supposed determination on the scene that all the footage from all the vehicles did not capture "any pertinent events."

1   measures, if any at all, the City of Prescott took to prevent the destruction of that highly
2   relevant evidence.  The only reasonable inference to draw from this record is that the City
3   of Prescott did not take any reasonable step whatsoever to preserve any of the highly
4   relevant dash camera video files and instead, at best, stood idly by while that evidence was
5   permanently deleted on some unknown date.

   **III.   Plaintiff has been significantly prejudiced by the City of Prescott's failure to preserve the highly relevant dash camera footage.**

   **A.   Burden of Proof**

9   Although Federal Rule of Civil Procedure 37(e)(1) requires the Court to make a
10  finding of prejudice before it imposes spoliation sanctions, the Advisory Committee's Notes
11  associated with Federal Rule of Civil Procedure 37(e)(1) explain that the Rule "does not
12  place a burden of proving or disproving prejudice on one party or the other." Fed. R. Civ.
13  P. 37(e)(1) advisory committee's note to 2015 amendment.  This is so because
14  "[d]etermining the content of lost information may be a difficult task in some cases" and
15  "placing the burden of proving prejudice on the party that did not lose the information may
16  be unfair." *Id.*  So, the Rule "leaves judges with discretion to determine how best to assess
17  prejudice in particular cases." *Id.*

18  Under the circumstances here, it would be manifestly unfair to place the burden of
19  proving prejudice on Plaintiff.  Plaintiff has never seen any of the deleted dash camera
20  footage and had no ability at all to access or preserve that evidence.  Even more, Plaintiff
21  was a *pro se* litigant in prison until this Court appointed him pro bono counsel after his post-
22  arrest excessive force claim survived summary judgment.  And despite newly-appointed
23  counsel providing notice to Defendant—who has been represented by counsel throughout
24  this case—in January in the Motion to Reopen Discovery that Plaintiff seeks all video
25  footage of the events in question on June 25, 2016, [Dkt. 40], and again in March when
26  Plaintiff served discovery requests to Defendant and a subpoena to the City of Prescott,
27  [Dkt. 47, 48], Plaintiff only discovered for the first time that City of Prescott police vehicles
28  even have dash cameras during Defendant's deposition on April 16, 2019, [Yost Decl., Ex.

1  H (Yost Emails)]. It is the City of Prescott's exclusive acts or omissions that permanently
2  deleted the best evidence of what occurred between Plaintiff and Defendant—at least <u>three</u>,
3  but potentially up to <u>seven</u>, sets of video dash camera footage from separate City of Prescott
4  police vehicles that arrived at or near the parking lot at or near the time of the alleged
5  excessive force. For all these reasons, this Court should conclude that, under the
6  circumstances in this case, Defendant bears the burden of proving the absence of prejudice
7  to Plaintiff as a result of the City of Prescott's permanent destruction of evidence.

### B. Prejudice

Plaintiff alleges (and Defendant denies) that Defendant intentionally struck Plaintiff while Plaintiff was in handcuffs and lying face down on the ground. Plaintiff further alleges (and Defendant further denies) that Defendant continued striking Plaintiff until another City of Prescott police officer arrived at the parking lot. Any dash camera footage from any of the seven City of Prescott police officers who arrived on the scene in City of Prescott police vehicles is highly relevant because such footage could have documented the excessive force alleged in this suit, the intervention that Plaintiff alleges stopped Defendant's use of force, or the interactions among City of Prescott police officers immediately after they arrived on the scene. At the very least, the dash camera footage from Defendant's City of Prescott police vehicle and from the vehicles of the two City of Prescott police officers who both testified that they arrived first on the scene with their emergency lights activated is highly relevant in light of Plaintiff's allegations. What is more, as far as Plaintiff is aware, <u>no</u> other video evidence has ever existed relating to what occurred between Plaintiff and Defendant on June 25, 2016.

As in *Pettit*, this Court should "take no comfort in Defendants' assertion that defense witnesses, who will favor the defense position, can testify about these events at trial." *See* 45 F. Supp. 3d at 1111. Nor should it be "sufficient to say that Plaintiff, a convicted felon," "can testify against uniformed [police officers] at trial." *See id.* Like the video evidence in *Pettit* that ADC permanently deleted, the dash camera footage here—of which there should have been at least <u>three</u>, but potentially up to <u>seven</u>, sets from separate City of Prescott

police vehicles—"was an objective witness that bore neither the potential pro-defense leanings of the defense witnesses nor the credibility problems of Plaintiff." *See id.*

"Without question," said Judge Campbell in *Pettit*, "that objective evidence was highly relevant to the claims at issue in [that] case." *Id.* So too here. *See id.*; *see also LaJocies v. City of N. Las Vegas*, No. 2:08-cv-00606-GMN-GWF, 2011 WL 1630331, at *2 (D. Nev. Apr. 28, 2011) ("Despite the limited viewing angle of the videotape . . ., it is likely that it did still capture at least some of the altercation (whether sights or sounds) and could have potentially assisted the jury to understand the tenor of the event and to evaluate the credibility of the witnesses who are providing conflicting descriptions."); *Peschel v. City of Missoula*, 664 F. Supp. 2d 1137, 1145 (D. Mont. Oct. 15, 2009) ("The obvious inherent value of the video recording is that it would have allowed the jury, the arbiter of the facts, to see the actual events unfold and make its own collective assessment as to whether the force used by [a police officer] . . . was or was not reasonable under the circumstances. The jury would not be forced to rely on the conclusions drawn by the various witnesses as to the reasonableness of the force used. Rather, the jury would have been able to form its own conclusions—unfiltered by the perceptions or sentiments of the various witnesses."). This Court should thus conclude that the deleted dash camera footage was highly relevant to Plaintiff's claims, and that the Plaintiff has accordingly suffered severe prejudice as a result of the City of Prescott's permanent destruction of evidence.

**IV.    The Court should (1) permit the parties to present evidence and argument to the jury regarding the City of Prescott's permanent destruction of the dash camera footage and (2) instruct the jury to assist the jury in its evaluation of that evidence and argument.**

Because all the prerequisites to obtaining spoliation sanctions under Federal Rule of Civil Procedure 37(e)(1) are present here, the Court should exercise its discretion to cure the significant prejudice that Plaintiff has suffered as a direct result of the City of Prescott's permanent deletion of all the dash camera footage that ever existed in connection with Defendant's arrest of Plaintiff on June 25, 2016 and the events that followed. The Advisory

Committee's Notes associated with Federal Rule of Civil Procedure 37(e)(1) explicitly contemplate the sanctions that Plaintiff is requesting here—that, "[i]n an appropriate case," the court may order "serious measures [that] are necessary to cure prejudice," such as "permitting the parties to present evidence and argument to the jury regarding the loss of information" and "giving the jury instructions to assist in its evaluation of such evidence or argument." *See* Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendment.

Plaintiff only seeks spoliation sanctions to cure the severe prejudice that he has experienced through no fault of his own, but rather from the City of Prescott's failure to preserve any of the highly relevant video footage that its vehicles recorded on June 25, 2016—the only video evidence of the scene that ever existed (as far as Plaintiff is aware)—in violation of its legal duty to preserve such evidence. As such, Plaintiff respectfully requests that the Court permit the parties to present evidence and argument to the jury regarding the City of Prescott's permanent destruction of all the dash camera footage and instruct the jury using the following instruction:

> During this case, Plaintiff has presented evidence that certain evidence related to the underlying facts of this case is no longer available for use at trial. This evidence is not available because of acts or omissions by City of Prescott employees. The City of Prescott had a duty under the law to preserve the evidence. The City of Prescott failed to satisfy this duty when it lost or destroyed the evidence prior to trial.
> The City of Prescott is not a party in this case. Nevertheless, because the City of Prescott failed to preserve the evidence, you may, but are not required to, infer that the lost or destroyed evidence would have favored Plaintiff's case. You may consider this, together with all the other evidence presented during the trial, in determining the facts of this case.

Although these sanctions cannot replace all the dash camera footage that the City of Prescott permanently deleted, the Court should impose these sanctions to, as close as possible, cure the significant prejudice that Plaintiff has experienced. *See Pettit*, 45 F. Supp. 3d at 1114 (allowing "the parties to present evidence and argument concerning the lost evidence" and instructing the jury "that ADC had a duty to preserve evidence, ADC did not preserve the evidence, and the jurors may, but are not required to, infer that the lost evidence

would have been favorable to Plaintiff"); *Ramos*, No. EDCV 12-1089 BRO, 2017 WL 2857523, *14 (recommending that the court adopt the plaintiff's requested instruction, which provided: "[Non-party] had a duty to preserve evidence in this case, including [the defendant's] personnel file.  [Non-party] contends that it inadvertently destroyed [the defendant's] personnel file after plaintiffs requested a copy of the personnel file.  You may, but are not required to, presume that the lost evidence was both relevant and favorable to plaintiffs' case.  You also may consider, among other things, whether the evidence shows [non-party] intentionally destroyed [the defendant's] personnel file").

## **CONCLUSION**

For the above reasons, Plaintiff respectfully requests that this Court (1) permit the parties to present evidence and argument to the jury regarding the loss or destruction of all the dash camera footage and (2) issue an appropriate instruction to the jury on spoliation to assist the jury in its evaluation of that evidence.

Dated:  May 20, 2019　　　　　　　　　**PERKINS COIE LLP**

By: *s/ Austin C. Yost*
　　Joseph E. Mais (#005470)
　　Lindsey M. Huang (#034544)
　　Austin C. Yost (#034602)
　　2901 North Central Avenue, Suite 2000
　　Phoenix, Arizona 85012-2788

Attorneys for Plaintiff Dustin Micheal Woods

**CERTIFICATION OF COUNSEL**

Pursuant to Local Rule of Civil Procedure 7.2, Plaintiff's counsel certifies that, as movant, counsel conferred with Defendant's counsel in a good faith effort to resolve the disputed spoliation issues that are the subject of this Motion. The parties were unable to reach a resolution on this matter.

Dated: May 20, 2019

**PERKINS COIE LLP**

By: *s/ Austin C. Yost*
    Joseph E. Mais (#005470)
    Lindsey M. Huang (#034544)
    Austin C. Yost (#034602)
    2901 North Central Avenue, Suite 2000
    Phoenix, Arizona 85012-2788

Attorneys for Plaintiff Dustin Micheal Woods

**CERTIFICATE OF SERVICE**

☒ I hereby certify that on May 20, 2019, I electronically transmitted the attached documents to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Larry Jay Crown (*LCrown@tbl-law.com*)

Elan Shai Mizrahi (*elan@tbl-law.com*)

<em>s/ Clair H. Wendt</em>